**PLAIN DEALER PUBLISHING CO., Plaintiff-Appellant, Cross-Appellee,**

v.

**CITY OF LAKEWOOD, Defendant-Appellee, Cross-Appellant.**

Nos. 84–3683, 84–3722.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1985.

Decided July 10, 1986. Rehearing and Rehearing En Banc Denied Sept. 26, 1986.

**1140**

James P. Garner (argued), Richard R. Hollington, Karen B. Newborn, Baker & Hostetler, Cleveland, Ohio, for plaintiff-appellant, cross-appellee.

Henry B. Fischer (argued), Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, John H. Gibbon, Frederick W. Whatley, for defendant-appellee, cross-appellant.

Before KEITH and KENNEDY, Circuit Judges, and UNTHANK *, District Judge.

* Honorable G. Wix Unthank, United States District Court, Eastern District of Kentucky, sitting by designation.

KEITH, Circuit Judge.

Appellant Plain Dealer Publishing Company challenges the constitutionality of a municipal ordinance that regulates the placement of newspaper dispensing devices ("newsracks") on the city streets of Lakewood, Ohio. Plain Dealer filed the instant action against the City of Lakewood ("City") after being denied permission to place its newsracks on City property pursuant to Section 901.181 of the Lakewood Codified Ordinances, as amended. On July 12, 1984, the district court entered judgment for the City with court costs assessed against the City. For the following reasons, we affirm in part and reverse in part.

## I.

### FACTS

The Plain Dealer daily newspaper is distributed as a publication of general circulation throughout the Cleveland Metropolitan area and Ohio. Generally, Plain Dealer daily newspaper sales are 77 percent by home delivery through carriers and 80 percent on Sundays by home delivery. The balance of the sales are by single copy through retail outlets and coin-operated vending boxes, the latter constituting 4.6 to 5.27 percent of total sales.

The City of Lakewood is approximately 5.5 square miles. It is an older residential community located in Cuyahoga County, Ohio, west of Cleveland. In 1980, the population of the City was 61,963. Lakewood has historically been a city of homes. The commercial areas of the City are located essentially along Madison and Detroit Avenues, conveniently close to all residential areas of the City. There is no area within the City more than one-quarter mile from an all-night newspaper outlet.

1. **901.181** NEWSPAPER DISPENSING DEVICES; PERMIT AND APPLICATION.
 Applications may be made to and on forms approved by the Mayor for rental permits allowing the installation of newspaper dispensing devices on public property along the streets and thoroughfares within the City respecting newspapers having general circulation throughout the City.

In May 1982, Plain Dealer sought permission from the City Law Director to place coin-operated newsracks at sites within the City. The various sites included the commercial areas along Madison and Detroit Avenues and the residential areas along Clifton Boulevard. The City Law Director denied the request citing Section 901.18 of the Lakewood Codified Ordinances which provided at that time:

> **901.18** ERECTING BUILDINGS OR STRUCTURES ON PUBLIC GROUND. No person shall erect or place, or cause to be erected or placed, or permit to remain, any building or structure of any nature upon any street, lane, alley or public ground within the City.

Plain Dealer filed suit eight months later on January 5, 1983, attacking the constitutionality of Section 901.18. On August 18, 1983, the district court granted plaintiff's motion for summary judgment ruling the ordinance provision was an unconstitutional exercise of police power, and that it banned a reasonable means of newspaper distribution. The court held the issuance of a permanent injunction in abeyance for sixty (60) days in order to give the City an opportunity to enact constitutional provisions regulating placement of newsracks on public property.

On October 17, 1983, the City amended Section 901.18 to permit erection of a structure on public property with the consent of the City where permitted by city or state law. Under the amended ordinance, Plain Dealer would have to apply to the Mayor for a rental agreement or permit. After initial enactment of the amended ordinance, the City reexamined Plain Dealer's objections to the ordinance and on January 3, 1984, again amended the ordinance. Section 901.181,[1] as amended, provides that

The Mayor shall either deny the application, stating the reasons for such denial or grant said permit subject to the following terms:
(a) The term "newspaper dispensing device", as used in this Section, shall mean a mechanical, coin operated container constructed of metal or other material of substantially equivalent strength and durability, not more than fifty (50) inches in height and not more than

the Mayor may grant a rental permit application upon payment of a $10.00 rental fee for each site, submission of a certificate of insurance and compliance with the appearance and architectural standards set by the Architectural Board of Review ("the Board"). Under subsection (c)(7) of the amended ordinance, however, the Mayor may subject an application to any additional conditions he or she deems necessary. The amended code would permit Plain Dealer, upon application, to place news-

twenty-five (25) inches in length and width. The design of such devices shall be subject to approval by the Architectural Board of Review.

(b) Newspaper dispensing devices shall not be placed in the residential use districts of the City and shall otherwise be placed adjacent and parallel to building walls not more than six (6) inches distant therefrom or near and parallel to the curb not less than eighteen (18) inches and not more than twenty-four (24) inches distant from the curb at such locations applied for and determined by the Mayor not to cause an undue health or safety hazard, interfere with the right of the public to the proper use of the streets and thoroughfares, or cause a nuisance as proscribed by Ohio Revised Code, Section 723.01. Provided further, however, that no newspaper dispensing device shall be placed, installed, used or maintained:

(1) so as to reduce the clear, continuous combined sidewalk and paved tree lawn width to less than five (5) feet;

(2) within five (5) feet of any fire hydrant or other emergency facility;

(3) within five (5) feet of any intersecting driveway, alley, or street;

(4) within three (3) feet of any marked crosswalk;

(5) at any location where the width of paved clear space in any direction for the passageway of pedestrians is reduced to less than five (5) feet;

(6) within two hundred and fifty (250) feet of another newspaper dispensing device containing the same newspaper or news periodical, except that the Mayor may permit two such dispensing devices at an intersection where such placement would not impair traffic or otherwise create a hazardous condition; and

(7) at any location where three (3) newspaper dispensing devices are already located.

(c) The rental permit shall be granted upon the following conditions:

(1) the permittee shall pay a rental fee which shall be Ten Dollars ($10.00) per year or part thereof, for each location where a newspaper dispensing device is installed;

(2) the permittee, upon the removal of a newspaper dispensing device, shall restore the property of the City to the same condition as when the device was initially installed, ordinary wear and tear excepted;

(3) the permittee shall maintain the device in good working order and in a safe and clean condition and keep the immediate area surrounding such device free from litter and debris;

(4) the permittee shall not use a newspaper dispensing device for advertising signs or publicity purposes other than that dealing with the display, sale, or purchase of the newspaper sold therein;

(5) the permittee shall save and hold the City of Lakewood harmless from any and all liability for any reason whatsoever occasioned upon the installation and use of each newspaper dispensing device and shall furnish, at permittee's expense, such public liability insurance as will protect permittee and the City from all claims for damage to property or bodily injury, including death, which may arise from the operation under the permit or in connection therewith and such policy shall name the City of Lakewood as an additional insured, shall be in an amount not less than One Hundred Thousand Dollars ($100,000) combined single limit for any injury to persons and/or damaged property, and shall provide that the insurance coverage shall not be cancelled or reduced by the insurance carrier without thirty (30) days prior written notice to the City. A certificate of such insurance shall be provided to the City and maintained before and during the installation of such devices;

(6) rental permits shall be for a term of one year and shall not be assignable; and

(7) such other terms and conditions deemed necessary and reasonable by the Mayor.

. . . .

(e) A person aggrieved by a decision of the Mayor in refusing to grant or revoking a rental permit shall have the right to appeal to Council. Such appeal shall be taken by filing a notice of appeal including a statement of the grounds for the appeal with the Clerk of Council within ten (10) days after notice of the decision by the Mayor has been given. Council shall set the time and place for hearing such appeal and notice of such time and place shall be given in the same manner as specified hereinabove. The Council shall have the power to reverse, affirm, or modify the decision of the Mayor and any such decision made by the Council shall be final.

racks at locations it requested on Madison and Detroit Avenues in the commercial district, but not along Clifton Boulevard in the residential use districts.

After the City had amended the regulatory scheme twice, Plain Dealer filed its amended complaint challenging the constitutionality of the regulatory scheme. Trial was scheduled on April 11, 1984, to hear Plain Dealer's request for a preliminary and permanent injunction.

There was evidence at trial that although Plain Dealer made no application for a permit, it had intended to place newsracks at eighteen locations in Lakewood, eight of which were located in residential districts on Clifton Boulevard. The district court concluded the amended ordinances were constitutional and entered judgment for the City. On appeal, Plain Dealer argues that Sections 901.18 and 901.181 should be declared unconstitutional because they impose prior restraints on the freedom of press by requiring permits and the payment of rental fees, absolutely ban newsracks in residential districts, and impose unduly burdensome procedures for compliance. Essentially, this appeal analyzes the constitutionality of the Mayor's power to grant or refuse permits, the constitutionality of the Board's power to approve the designs of newsracks, the insurance requirement and the absolute ban in residential districts of newsracks.[2] We reverse the district court decision in part because Sections 901.18 and 901.181 unconstitutionally give the Mayor unlimited discretion in denying permits; unconstitutionally provide the Board with standardless discretion in approving newsrack designs; and unconstitutionally require applicants to provide insurance to the City. However, we affirm the remainder of the district court's decision, specifically holding constitutional that part of the ordinance banning newsracks in all residential areas.

## II.

## ANALYSIS OF ORDINANCE

A. *Provision Giving Mayor Unbridled Discretion To Grant Or Deny Permit Is Unconstitutional*

■ The right to distribute newspapers by means of newsracks is protected by the First Amendment to the United States Constitution. *Miami Herald Publishing Co. v. City of Hallandale*, 734 F.2d 666, 673 (11th Cir.1984); *see Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *see also Hull v. Petrillo*, 439 F.2d 1184 (2d Cir.1971). However, the State may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant interest, and leave open ample alternative channels of communication. *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983) (citations omitted). Laws which vest municipal officials with unguided discretion to grant or deny a newsrack license or permit "do not regulate with [the] narrow specificity" required by the First Amendment. *Association of Community Organizations for Reform Now, (ACORN) v. Municipality of Golden, Colorado*, 744 F.2d 739, 746 (10th Cir.1984). The Supreme Court in *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), stated:

> But even if the Secretary were correct, and the waiver provision were broad enough to allow for exemptions "whenever necessary," we would find the statute only slightly less troubling. Our cases make clear that a statute that requires such a "license" for the dissemination of ideas is inherently suspect. By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free

---

**2.** However, we do not specifically discuss each issue raised by Plain Dealer because they are not dispositive of the ultimate determination of

this case. For example, we believe the imposition of a rental fee withstands constitutional scrutiny.

speech.... Under the Secretary's interpretation, charities whose First Amendment rights are abridged by the fundraising limitation simply would have traded a direct prohibition on their activity for a licensing scheme that, if it is available to them at all, is available only at the unguided discretion of the Secretary of State.

*Id.* at 964 n. 12, 104 S.Ct. at 2851 n. 12 (citations omitted); *See also Fernandes v. Limmer,* 663 F.2d 619, 631 (5th Cir.1981), *cert. dismissed,* 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982) (holding unconstitutional ordinance that gave executive director excessive discretion in deciding whether the grant of a permit would be detrimental to the public). Thus, in order to qualify as narrowly tailored, a content neutral ordinance must avoid vesting city officials with discretion to grant or deny licenses, for

> It is settled by a long line of recent decisions of this Court that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Staub v. City of Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958); *See also Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969).

In *Staub,* the Supreme Court struck down an ordinance under which the Mayor and the City Council had the discretion to grant or deny a permit. 355 U.S. at 321, 78 S.Ct. at 281. The Court held that the ordinance on its face imposed an unconstitutional prior restraint because it authorized the Mayor and the Council to refuse or to grant a permit in their uncontrolled discretion. *Id.* at 325, 78 S.Ct. at 284. Similarly, in *Shuttlesworth,* the Supreme Court refused to uphold a conviction for demonstrating without a permit because the City Commission had virtually unbridled discretion to grant or deny the permit.

 We find that the City of Lakewood's ordinance unconstitutionally permits the granting of permits to be contingent upon the Mayor's unbridled discretion. Section 901.181(c)(7) provides that a rental permit is granted upon "terms and conditions deemed necessary and reasonable by the Mayor." It is clear from subsection (c)(7) that the Mayor is vested with unlimited discretion to grant or deny a permit and make it subject to almost any conditions he may choose. Furthermore, although the language of the ordinance limits the conditions under which the Mayor may grant a permit, it does not contain any standards for the Mayor to use when denying a permit. Consequently, the ordinance's restriction is not narrowly tailored to serve a significant government interest. *See Shuttlesworth,* 394 U.S. 147, 89 S.Ct. 935.

The Supreme Court has repeatedly struck down ordinances which condition the exercise of First Amendment activities on the broad discretion of local officials, resulting in virtually unreviewable prior restraints on First Amendment rights. *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948). When a city allows an official to ban a means of communication through uncontrolled discretion, it sanctions a device for suppression of free communication of ideas. *Saia,* 334 U.S. at 562, 68 S.Ct. at 1150.[3] The constitutional problem here lies in the very existence of such unfettered discretion.

---

**3.** *Saia* involved a city ordinance which prohibited the use of a sound amplification device without the permission of the police chief. Other licensing systems which are similar have been held unconstitutional prior restraints on speech because they vest broad discretion in granting or withholding a permit upon broad criteria unrelated to proper regulation of public places. *See Shuttlesworth v. City of Birmingham,* 394 U.S. at 153, 89 S.Ct. at 940; *See also Kunz,* 340 U.S. 290, 71 S.Ct. 312.

The City argues that the Mayor can refuse a permit only "upon health and safety reasons." Although municipalities may enact laws in furtherance of the public health and safety, the City is incorrect in its argument for two reasons. First, no language appears in the ordinance specifically limiting the Mayor's power to refuse a permit for health and safety reasons.[4] The district court ruled the City's evidence of such a standard was inadmissible. Second, if health and safety or other legitimate concerns are what the City seeks to address, the language of the ordinance should be limited accordingly. *See Wulp v. Corcoran*, 454 F.2d 826, 834 (1st Cir.1972). An ordinance providing for unguided governmental discretion is inherently inconsistent with a valid time, place and manner regulation because it provides for potential suppression of a particular point of view. *See Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

■ The district court held that application and appeal procedures pursuant to Section 901.181(e) and Ohio Revised Code Chapter 2506 provide an adequate remedy for any wrong alleged by Plain Dealer.[5] The "adequate state remedies" include the application for a permit, appeal to City Council and appeal to the court of common pleas under Chapter 2506 of the Ohio Revised Code. However, these procedures require Plain Dealer to apply for a permit and appeal any denial prior to placing newsracks on the sidewalks and subject acquisition of the permit to standardless administrative discretion. The fact that the ordinance provides an appeal process does not cure the unconstitutionally broad discretion it accords the Mayor to impose

prior restraints on First Amendment rights. Consequently, the district court erred in concluding that these remedies are adequate.

■ The City argues that under the holdings of *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), and *Gannett Satellite Information Network, Inc. v. Metropolitan Transportation Authority*, 745 F.2d 767 (2d Cir.1984), Plain Dealer cannot attack the ordinance because the newspaper has never applied for a permit. We are not persuaded by this argument. In *Greer*, the Supreme Court upheld Fort Dix regulations banning partisan political speeches and demonstrations and prohibiting the distribution of any literature without the prior written approval of a commanding officer. An Army regulation specified that the commander could only disapprove publications presenting an apparent danger to military morale, loyalty or discipline. *Id.* 424 U.S. at 840, 96 S.Ct. at 1218. The Court in *Greer* specifically considered the facial validity issue and held that the regulations at issue were constitutional on their face because they applied to a federal military reservation, not a traditional public forum. *Greer*, 424 U.S. at 838, 96 S.Ct. at 1217. Having found the regulations facially valid, the Court held that it would not reach the question of unconstitutional application because no approval had been sought from the appropriate authorities. In the instant case, Plain Dealer challenges the facial validity of Lakewood's ordinances and does not rely on a claim of unconstitutional application. Accordingly, *Greer* is not contrary to Plain Dealer's position.

In *Gannett Satellite Information Network, Inc., supra*, after holding that the

---

**4.** Section 901.181(b) states that in determining the location of the newsracks the Mayor should not cause an undue health or safety hazard. However, the language does not state that the Mayor *can only refuse a permit for health and safety reasons.*

**5.** The district court relied upon *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Vicory v. Walton*, 721 F.2d 1062 (6th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct.

125, 83 L.Ed.2d 67 (1984), which hold that actions for *money damages* cannot be brought under 42 U.S.C. Section 1983 if there are adequate remedies at state law. However, these cases are distinguishable to the instant case in that this case is not an action for money damages under Section 1983. It is an action for declaratory and injunctive relief from an ordinance which allegedly abrogates First Amendment rights.

Metropolitan Transportation Authority's ("MTA") unregulated licensing scheme for the placement of newspaper vending machines in MTA commuter stations violated the First and Fourteenth Amendments, the district court ordered the adoption of reasonable standards governing the issuance and terms of licenses. The Second Circuit reversed, holding, in part, that MTA need not adopt such guidelines at that time. The court of appeals questioned whether the Gannett Company could require the MTA to establish standards governing the issuance of licenses stating:

> But there is no evidence or finding that MTA has arbitrarily denied licenses or imposed unreasonably discriminatory terms on anyone, or that there is any threat of such conduct. It is doubtful that this record presents a justiciable controversy with respect to the reasonableness of the licensing terms. Therefore, while guidelines might be helpful, we will not require them at this time.

*Id.* at 776. However, in this case, the City has issued regulations the validity of which is directly challenged by Plain Dealer. Moreover, subsection (c)(7) of those regulations permits, on its face, unbridled discretion and therefore an inherent threat of arbitrary decision making. Since *Gannett* did not involve a facial challenge to adopted licensing requirements, it is inapplicable to this instant case.

**B.** *Provision Granting the Architectural Board of Review With Standardless Discretion Is Unconstitutional*

 The provision requiring the Board to approve the design of newsracks is unconstitutional under a time, place and manner analysis because the provision is not narrowly tailored to serve a significant governmental interest. *See Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). In essence, the provision gives the Board stan-

dardless discretion to approve the design of newsracks. The City claims that Section 1325.03 of the Lakewood Codified Ordinances provides the Board with adequate standards. Section 1325.03 allows the Board to regulate the construction or alteration of buildings according to "accepted and recognized architectural principles". A newsrack, however, is not a building. The Chairman of the Architectural Board admitted at trial that the Board had no standards for approving or disapproving the design of newsracks. Since the ordinance contains no standards to guide the Board in approving or rejecting newsrack designs, we hold that provision unconstitutional under the First and Fourteenth Amendments.

**C.** *Provision Requiring Indemnification Before Access to Public Streets and Sidewalks Is Unconstitutional*

 On appeal Plain Dealer also challenges the constitutionality of Section 901.181(c)(5) of the Lakewood Codified Ordinance requiring that "permittees" indemnify and insure the City as a condition to gaining access to its public streets and sidewalks.[6] We believe this provision also violates the First Amendment.

The district court held that since the City is liable under Ohio Revised Code Section 723.01 for the failure to maintain the streets, sidewalks, and publicways, it should not be exposed to additional liability without indemnification by any private commercial use on such City owned property. The district court cites *Haverlack v. Portage Homes, Inc.,* 2 Ohio St.3d 26, 442 N.E.2d 749 (1982) (holding that the defense of sovereign immunity is not available, in the absence of a statute providing immunity, to a municipal corporation in a negligence action); *Dickerhoof v. City of Canton,* 6 Ohio St.3d 128, 451 N.E.2d 1193 (1983) (holding that a municipal corporation may be liable for injuries resulting from its

---

**6.** Section 901.181(c)(5) provides that a newspaper box "permittee" must indemnify the City for all liability "for any reason whatsoever occasioned upon the installation and use" of a news-

paper box. Furthermore, the ordinance requires the permittee to provide property damage and personal injury insurance in the amount of $100,000, naming the City as an insured.

failure to keep the shoulder of a highway in repair); and *Associated Press v. National Labor Relations Board*, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953 (1937) (holding that the National Labor Relations Act does not unconstitutionally abridge the freedom of the press in that it does not interfere with the right to discharge any employee for any proper cause) as authority for the above proposition. However, these cases are inapposite in that none of them discusses insurance or indemnification. They stand only for the general propositions that 1) local governments retain power to indemnify themselves, *Haverlack*, 2 Ohio St.3d at 30, 442 N.E.2d 749; 2) local governments may be liable for negligence in maintaining the streets, *Dickerhoof*, 6 Ohio St.3d at 131, 451 N.E.2d 1193; and 3) news organizations are subject to overall regulations and laws and are not entitled to special privileges. *Associated Press*, 301 U.S. at 132–33, 57 S.Ct. at 655–56. The City does not require other permittees to provide insurance. For example, neither the bus nor telephone companies are required to insure bus shelters or telephone equipment. Since the City cannot impose more stringent requirements on First Amendment rights than it does on others, we believe the indemnification aspect of the ordinance places an undue burden on Plain Dealer.

### D. Ban Of All Newsracks In Residential Areas Is Constitutional

■ The state may enforce time, place and manner regulations which are content-neutral, are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

We find that the City's total ban of newsracks in residential areas is a constitutional time, place and manner regulation. First, the ordinance is content-neutral because it bans *all* newsracks in residential areas of the City. Second, the ordinance is narrow-

ly tailored to serve a significant government interest. We agree with the district court's holding that "traffic safety, proper functioning of a city's safety and sanitation forces, maintaining a clear right-of-way on sidewalks for pedestrians, and aesthetics are all substantial government interests and the subject ordinances reach no further than necessary to accomplish the City's objectives." *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion). Finally, the ordinance leaves open ample alternative channels of communication. For example, the City admits that a person may sell newspapers by mail or by direct home delivery in residential areas free from governmental interference. Moreover, there are eleven sites within the City, and two sites immediately adjacent to the City, where newsracks are located on private property within commercial zones. In fact, all residences in the City are within one quarter of a mile from an existing newsrack. Furthermore, there are eleven "all-night" businesses within the City and two "all-night" businesses adjacent to the City which sell the Plain Dealer 24 hours a day, seven days a week. Thus, the City's total ban of newsracks in residential districts is a constitutional time, place and manner regulation. We also agree with the District Court that the remaining provisions of ordinances are not unconstitutional.

## III.

### SEVERABILITY

■ The Supreme Court has held that invalid portions of a statute should be severed unless it is clear that the Legislature would not have enacted those provisions which are constitutional, independent of those provisions which are not. *INS v. Chadha*, 462 U.S. 919, 931, 103 S.Ct. 2764, 2773, 77 L.Ed.2d 317 (1983); *Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976). Moreover, a provision is presumed severable if what remains after severance is fully operative as a law. *Chadha*, 462 U.S. at 934, 103 S.Ct. at 2775.

When the unconstitutional portions of the ordinance dealing with the Mayor's unlimited discretion in denying permits, the Board's standardless discretion in approving newsrack designs, and the insurance requirements for proposed applicants are deleted from the remaining portion of the ordinance dealing with newsracks in commercial areas, what is left cannot stand on its own. Consequently, the portion of the ordinance regulating newsracks in commercial areas must be held unconstitutional. The remaining portion of the ordinance banning newsracks in residential areas, however, survives as a workable ordinance because it is fully operable as a law. Since prior ordinances under the City's regulatory scheme sought to ban *all* newsracks under all circumstances, we believe this indicates clear legislative intent to ban newsracks in residential areas. Consequently, we sever the ordinance's unconstitutional provisions and hold that the City may constitutionally ban newsracks in residential areas.

## IV.
### CROSS APPEAL FOR COSTS

 The final issue is whether the district court abused its discretion in awarding costs to appellant Plain Dealer. The City argues that the district court committed reversible error by denying its requests for costs without stating reasons. In view of our disposition of the case on appeal, the district court's award of costs to Plain Dealer is not erroneous. Furthermore, to prevail on cross-appeal, Lakewood must show more than error. We review decisions awarding costs under an abuse of discretion standard. *Owen v. Modern Diversified Industries, Inc.*, 643 F.2d 441 (6th Cir.1981); *see also Missouri Pacific Railroad Company v. Star City Gravel Company, Inc.*, 592 F.2d 455 (8th Cir.1979). Under the abuse of discretion standard, an appellate court may overturn a lower court's ruling only if it finds that the ruling was arbitrary, unjustifiable or clearly unreasonable. *See NLRB v. Guernsey-Muskingum Electric Co-operative, Inc.*, 285 F.2d 8, 11 (6th Cir.1960). In the instant case, the City amended the ordinance twice in response to a lawsuit by Plain Dealer.

Specifically, the district court granted the Plain Dealer's motion for summary judgment on its initial complaint. No appeal was taken from that decision. Since the City has failed to show that the ruling in this case was arbitrary or unreasonable, the district court did not abuse its discretion in awarding costs to Plain Dealer.

Accordingly, the decision of the district court is affirmed in part and reversed in part consistent with the analysis of this opinion.

UNTHANK, District Judge, concurring.

I concur in the opinion of the Court with the exception of the holding that the insurance or indemnity requirements of the Lakewood ordinance violate the First Amendment. I consider them legitimate and reasonable provisions for the protection of the City from liability. The fact that the City does not require insurance for public services of a quasi-governmental nature does not prohibit it from requiring insurance for other services.