Maxine W. **HENDERSON,**

v.

THE CITY OF **MURFREESBORO,** TENNESSEE.

No. 3–96–0217.

United States District Court, M.D. Tennessee, Nashville Division.

March 27, 1997.

Gerald A. Smith, Jr., Little & Smith, Nashville, TN, for Plaintiff.

Larry G. Trail, Trail & Taylor, Murfreesboro, TN, for Defendant.

## MEMORANDUM

HIGGINS, Judge.

The Court has before it the plaintiff's motion (filed September 9, 1996; Docket Entry No. 9) for partial summary judgment, memorandum (Docket Entry No. 10) in support and the defendant's response (filed September 30, 1996; Docket Entry No. 27). In addition, the Court has before it the defendant's motion (filed September 10, 1996; Docket Entry No. 19) for summary judgment, memorandum (Docket Entry No. 20) in support and the plaintiff's response (filed September 20, 1996; Docket Entry No. 26). In addition, the Court heard oral argument from the parties on March 7, 1997.

The Court has subject matter jurisdiction over the plaintiff's claims under 28 U.S.C. § 1331.

For the reasons discussed below, the defendant's motion for summary judgment will be denied in part and granted in part. The plaintiff's motion for partial summary judgment will be granted in part and denied in part.

I.

The plaintiff, Maxine W. Henderson, originally filed this action on March 6, 1996, alleging that the defendant, the City of Murfreesboro, violated her rights to freedom of expression and due process under the First and Fourteenth Amendments. Specifically,

the plaintiff asserts that by removing her painting from the Rotunda of the Murfreesboro City Hall, the defendant violated her right to freedom of expression. Mrs. Henderson also contends that the defendant deprived her of a liberty interest without providing any procedural due process. Finally, the plaintiff seeks a declaratory judgment that the defendant's new art policy violates the First Amendment.

In 1991, the defendant established, by resolution, an art committee to oversee the exhibition of works of art in the Rotunda. The pieces were to be submitted upon invitation by the committee. Once submitted, the committee would choose the pieces it desired to display based on a short list of criteria.[1] The art committee utilized that criteria until it adopted a new art policy[2] on December 7, 1995. The exhibition has included at least fifty works of art since 1991, varying in subject matter.

Upon invitation by the art committee, the plaintiff submitted a number of her oil paintings for display in the Rotunda in the fall of 1995. Mrs. Henderson's submissions to the art committee spanned a wide variety of subjects including local churches, landscapes, still-lifes and portraits. The art committee placed all of her submissions in the Rotunda for display on October 2, 1995.

Among her other pieces, the plaintiff submitted a painting of a partially nude woman, entitled "Gwen."[3] The painting depicts a seated white female, legs crossed at the knees, with her left arm draped across her chest. Neither her buttocks nor her genital area is visible. Approximately one half to three quarters of her left nipple is visible. The impressionist style of the painting was achieved by applying the paint with a palette knife. This painting was displayed, like oth-

ers accepted and displayed by the art committee, in the Rotunda.

On October 12, 1995, Laurie Crowder, the assistant superintendent of Murfreesboro City Schools, entered the Rotunda en route to a public meeting of the School Board. Mrs. Crowder viewed the painting and expressed her unhappiness with the display of the painting to Susan McGannon, an assistant attorney for the defendant. Mrs. Crowder indicated that she would like to have the painting removed immediately.

The next day, Mrs. Crowder filed a sexual harassment complaint with the defendant. Deposition of Susan McGannon (filed September 9, 1996; Docket Entry No. 16), exhibit A. She asserted that she found the painting to be "pornographic" and "very offensive and degrading to [her] as a woman."[4] *See id.* She indicated that she felt the painting to have been "thrust in [her] face on [her] way into a meeting with [her] superiors, most of whom are men."[5] *Id.*

The city attorney, Mr. Reed, received Mrs. Crowder's complaint on October 13, 1995. Mr. Reed determined that he did not believe the painting to herald a successful Title VII suit against the city, but concluded that it violated the defendant's sexual harassment policy. He contends that it violated the policy because "[i]t was a nude woman that is sexually explicit; [i]t looked like a woman who had just got out of the bathtub or just got out of bed after having sex; and [i]ts [sic] clearly sexual." *Id.* at ¶ 50. Mr. Reed attempted to contact the city manager, but did not succeed and subsequently removed the painting from the Rotunda himself.

On December 7, 1995, the defendant adopted a new policy on the art to be dis-

---

1. *See* defendant's responses to plaintiff's statement of undisputed material facts (filed September 30, 1996; Docket Entry No. 28) at ¶ 15.

2. Deposition of LThomas L. Reed, Jr. (filed September 9, 1996; Docket Entry No. 15), exhibit 1.

3. All subsequent references to "the painting" refer to this painting, entitled "Gwen."

4. In Mrs. Crowder's complaint, she stated that she "find[s] 'art' in any form whether it be a painting, a Greek statute, or a picture out of

Playboy which displays genitals, buttocks and/or nipples of the human body to be pornographic." Deposition of Ms. McGannon (Docket Entry No. 16), exhibit A.

5. Interestingly, Mrs. Crowder based her complaint on the fact that she found the painting "offensive," not that she considered it sexual harassment. *See* defendant's response to plaintiff's statement of undisputed facts (Docket Entry No. 28) at ¶¶ 31, 36.

played in the Rotunda. In the new policy, language was added to the previous policy addressing the prohibition of pieces of art which "infringe" upon the defendant's employee policies. *See* deposition of Mr. Reed (Docket Entry No. 15), exhibit 1.

In her motion for partial summary judgment, the plaintiff contends that she is entitled to judgment as a matter of law as to her claim that the defendant violated her First Amendment right to freedom of expression by removing her painting from the Rotunda. She also contends that there exists no issue of material fact as to her claim that the new art policy violates the First Amendment.

The defendant contends that it is entitled to judgment as a matter of law as to all of the plaintiff's claims because there exists no genuine issue of material fact. The City asserts that it removed the painting in order to comply with its sexual harassment policy and was entitled to do so in order to further the compelling state interest of eradicating sexual discrimination and avoiding Title VII lawsuits. Furthermore, the defendant asserts that it is entitled to judgment as a matter of law on the plaintiff's claim that the defendant deprived her of liberty and/or property without due process of law.

For the most part, the parties are in agreement as to the facts. The issues of whether the action of the defendant in removing the painting and the new art policy constitute violations of the First Amendment are essentially questions of law which the Court may pass upon at this time as the parties have failed to dispute material facts relating to those issues.

## II.

### *Summary Judgment*

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, 1349 (6th Cir.1991).

In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.,* 921 F.2d at 1349; *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). A dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6] *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co.,* 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dis-

---

6. The Supreme Court further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

pute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

### III.

#### A. Removal of the Painting from the Rotunda

Initially, the Court must consider the following two issues: 1) whether the First Amendment applies to the defendant's removal of the painting from the Rotunda and, if so, 2) whether the removal was permissible within the confines of the plaintiff's right to free expression. As to the first inquiry, there is no dispute concerning the fact that the painting is a protected form of expression under the First Amendment. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557–58, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448, 458–59 (1975) (discussing theater as a protected form of expression). However, the scope of protection due Mrs. Henderson's painting is largely based on the forum in which the painting was displayed. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794, 804–05 (1983). While the defendant was under no obligation initially to permit artists to display their works in the Rotunda, it came under certain obligations once it invited individuals to submit their works for display. *See id.* at 45–46, 103 S.Ct. at 955, 74 L.Ed.2d at 805. When property is open to the public, the expression which occurs on that property is afforded a certain amount of protection, depending on the type of public property involved. *Id.* at 44, 103 S.Ct. at 954–55, 74 L.Ed.2d at 804. The greatest amount of protection is afforded to traditional public forums such as parks, streets, and sidewalks. *Id.* at 45, 103 S.Ct. at 954–55, 74 L.Ed.2d at 804. Extensive protection is also afforded to certain types or subjects of expression found in a limited public forum. *Id.* at 45, 103 S.Ct. at 955, 74 L.Ed.2d at 805.

Thus, the Court must initially consider what type of forum the Rotunda represented when the painting was removed. A limited public forum is public property which has been designated as a venue for expression, but was not required to be used for such a purpose. *Perry,* 460 U.S. at 45–46, 103 S.Ct. at 955, 74 L.Ed.2d at 805. Merely permitting public access to government property does not render the property a public forum. *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505, 513 (1976). In order to alter the nature of the property to that of a public forum, the venue must be made suitable for expressive conduct. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. at 555–56, 95 S.Ct. at 1245, 43 L.Ed.2d at 457.

While it is established that "[n]ot every instrumentality used for communication . . . is a traditional public forum or a public forum by designation," a limited public forum is created where the government "intentionally open[s] a nontraditional forum for public discourse." *See Cornelius v. NAACP Legal Defense & Educational Fund Inc.,* 473 U.S. 788, 802–03, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567, 580 (1985). The Court further noted that it would be "particularly reluctant to hold that the government intended to designate a public forum" where "the principal function of the property would be disrupted by expressive activity." *Id.* at 804, 105 S.Ct. at 3450, 87 L.Ed.2d at 581.

The defendant asserts that the Rotunda at the Murfreesboro City Hall has not been rendered a limited public forum simply by virtue of inviting members of the public to display art there. This position is not well taken. By resolution adopted on August 15, 1991, the City established a City Hall Art Committee which invited art to be submitted to the committee for possible display in the Rotunda. Defendant's response to plaintiff's statement of undisputed facts (Docket Entry No. 28) at ¶ 12. As noted by the Supreme Court of the United States in *Perry,* one of the harbingers of a limited public forum is that the government entity limits the use of the forum to certain groups or for the expression of certain subjects. *Perry,* 460 U.S. at 45 n. 7, 103 S.Ct. at 955 n. 7, 74 L.Ed.2d at

805 n. 7. The defendant asserts that it has not designated the Rotunda as a limited public forum because submission of works of art to the art committee is by invitation only. *See* defendant's statement of undisputed facts (Docket Entry No. 21) at ¶ 16. This fact serves only to establish a *limitation* to the extent that only certain groups were entitled to use the forum for expressive activity. As noted previously, limitation to certain groups is an aspect of this type of forum.

Furthermore, consideration of the nature of the forum weighs in favor of finding that the Rotunda was a limited public forum. While the parties do not agree as to the frequency with which city employees travel through the Rotunda, it is clear that the bulk of the work areas are not located in or near the Rotunda. *See* deposition of Thomas Reed (filed September 9, 1996; Docket Entry No. 15) at 43; *see also* defendant's response (Docket Entry No. 28) at ¶ 10. While employees certainly have had access to the Rotunda and might enter it on occasion, it does not comprise the primary workplace of the city's employees. As such, the nature of the Rotunda as a "central room" [7] does little to support the defendant's argument that its status as a "workplace" precluded it from being a limited public forum. *See Cornelius,* 473 U.S. at 805, 105 S.Ct. at 3450, 87 L.Ed.2d at 582. The Court concludes that the government created a limited public forum in the Rotunda for works of art selected on the basis of the established criteria.

■ Once the nature of the forum is determined, the Court must consider whether the city's proffered justifications for exclusion of the expression satisfy the requisite constitutional standard. *Id.* at 797, 105 S.Ct. at 3446, 87 L.Ed.2d at 576. In a limited public forum, the Constitution permits the govern-

ment to enforce "[r]easonable time, place, and manner regulations" which may be "content-based" as long as the restrictions are "narrowly drawn to effectuate a compelling state interest." *Perry,* 460 U.S. at 46, 103 S.Ct. at 955, 74 L.Ed.2d at 805. There is no question that the removal of the painting was content-based. Indeed, the parties are agreed as to the motivation behind the removal of the plaintiff's painting from the Rotunda. Mr. Reed removed the painting because it depicted a nude female. Defendant's response (Docket Entry No. 28) at ¶ 52. Thus, the remaining question presents the legal issue of whether the restriction was narrowly drawn in furtherance of a compelling government interest.

■ As noted previously, the defendant asserts that City Hall is primarily a workplace, and, as such, the City of Murfreesboro should have wide ranging discretion with regard to what can be displayed in light of its employment policies.[8] Defendant's memorandum in support (Docket Entry No. 20) at 16–17. One of its employment policies prohibits sexual harassment or discrimination. The defendant contends that it is sensitive to the necessity of prohibiting sexual discrimination or harassment in the workplace and, thus, cannot abide the display of objects which could be construed as derogatory toward women and which could potentially constitute the basis of liability. *Id.* at 15.

According to the defendant, the government's interest in eliminating sexual harassment and discrimination in the workplace trumps the plaintiff's First Amendment right to freedom of expression. Defendant's memorandum in support (Docket Entry No. 20) at 17. Surprisingly,[9] in a time of pro-

---

7. Webster's New Collegiate Dictionary 1025 (9th ed.1985).

8. The defendant also asserts that it should be viewed not as a censor of ideas but as an employer. It contends that acting in its role as an employer would entitle it to some standard other than that of a sovereign restricting the free expression of a citizen. Defendant's response to plaintiff's motion for partial summary judgment (Docket Entry No. 27) at 4. The Court notes that this argument is not well taken for two reasons. First, the plaintiff is not an employee of the City

of Murfreesboro. Second, even if the defendant is acting in its role as an "employer," that fact does not relieve it of the obligation to adhere to the proscriptions of the First Amendment. *Board of Educ. v. Pico,* 457 U.S. 853, 881, 102 S.Ct. 2799, 2815, 73 L.Ed.2d 435, 456 (1982) (Blackmun, J., concurring).

9. There have been numerous challenges to the Constitutionality of Title VII in light of the First Amendment right to freedom of religion and conflicts with the Establishment Clause. *See McDaniel v. Essex Int'l, Inc.,* 696 F.2d 34, 36 (6th

fuse employment litigation, this conflict between the freedom of expression guaranteed by the First Amendment and the proscriptions of Title VII is rarely addressed by the courts.[10] Forced to address this issue, some courts have determined that First Amendment rights may bow to "narrowly tailored remedies designed to advance the compelling governmental interest in eradicating employment discrimination." *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1536 (M.D.Fla.1991) (citations omitted). The Supreme Court has established that abolishing discrimination against women is a compelling government interest. *Board of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 549, 107 S.Ct. 1940, 1948, 95 L.Ed.2d 474, 486 (1987). Indeed, the United States Court of Appeals for the Ninth Circuit noted that "[b]y enacting Title VII, Congress clearly targeted the elimination of all forms of discrimination as a 'highest priority.'" *Pacific Press Pub. Ass'n,* 676 F.2d at 1280 (citation omitted). *See Mississippi College,* 626 F.2d at 489 ("[T]he government's compelling interest in eradicating discrimination is sufficient to justify the minimal burden imposed upon the Col-

lege's free exercise of religious beliefs.... ").

The category of "conduct" that the defendant asserts it is attempting to prohibit in order to avoid Title VII liability would, according to the defendant, contribute to a sexually hostile work environment based on harassment or an attitude of gender inequality.[11] *See Robinson,* 760 F.Supp. at 1535 (pornographic pictures and verbal harassment were not found to be protected speech because they constituted harassing conduct in hostile environment claim). However, the trouble lies not with the defendant's asserted interest in avoiding discriminatory conduct but the manner in which it has chosen to further this interest.

An invitation to display original works of art with no restriction as to subject matter demonstrates the government's intent to open the Rotunda for the purpose of artistic expression within the guidelines of the art committee's criteria. The purpose of the art committee was to "review, accept or reject proposed donations of works of art for the City Hall designate locations for same." Defendant's statement of undisputed material facts (Docket Entry No. 21) at ¶ 15. The criteria[12] which the art committee had in

Cir.1982); *see also EEOC v. Pacific Press Pub. Ass'n,* 676 F.2d 1272 (9th Cir.1982); *EEOC v. Mississippi College,* 626 F.2d 477 (5th Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981).

**10.** While the majority of courts have essentially ignored the conflict between free expression and Title VII, at least two commentators have considered it and the dearth of law on the subject. *See* Eugene Volokh, *Freedom of Speech and Workplace Harassment,* 39 U.C.L.A. L.Rev. 1791 (1992); Kingsley R. Browne, *Title VII as Censorship: Hostile–Environment Harassment and the First Amendment,* 52 Ohio St. L.J. 481 (1991).

**11.** The Court in *Robinson* described this attitude of inequality as a separate category of actionable conduct in the workplace. "This ... behavior ... creates a barrier to the progress of women in the workplace because it conveys the message that they do not belong, that they are welcome in the workplace only if they will subvert their identities to the sexual stereotypes prevalent in that environment." *Robinson,* 760 F.Supp. at 1523.

**12.** (1) A work must show a mastery of the art form or craft represented by the work presented,

including use of materials and awareness of design structure and artistic principals (sic).

(2) It must be an original work of art as opposed to a reproductive print created through the process of photography. Traditional prints (sic) making processes where the artist has full control of the image being crafted are considered original works of art. Paintings, sculptures, prints, photographs and appropriate hand-crafted items will be placed in a contemporary fine arts category. Works which are historic in nature and are representative of the above categories will be placed in the historic category and may be accepted on that basis.

(3) Works accepted may be done by local artists currently residing in Tennessee or by native Tennesseans living elsewhere, or by artists who have chosen Tennessee as the subject matter for the image presented; or by such artists as the three groups listed above who are no longer living.

(4) Works presented for consideration for acceptance in the city collection will be reviewed by the Council appointed committee, and this committee will be responsible for the acceptance or refusal on the basis of the criteria above.

Defendant's responses to plaintiff's statement of undisputed material facts (Docket Entry No. 28) at ¶ 15.

place initially contained no provisions for the acceptance of certain subject matter. Indeed, it appears that the works displayed thus far have spanned a wide range of subjects. *See id.* at ¶ 16.

Restrictions which grant state officers "unguided discretion" fail to " 'regulate with the narrow specificity' required by the First Amendment." *Plain Dealer Pub. Co. v. City of Lakewood,* 794 F.2d 1139, 1143 (6th Cir.1986) (quoting *Association of Community Org. for Reform Now, (ACORN) v. Municipality of Golden, Colorado,* 744 F.2d 739, 746 (10th Cir.1984)). As the criteria[13] represented the only possible guidance for the art committee to determine what it would display at the time when Mrs. Henderson's painting was removed, the Court must look to it for the "narrow specificity" required for restrictions of protected speech in a limited public forum. As noted previously, the criteria had no reference to limitations on certain subjects. It is well established that restrictions on protected expression which award unbridled discretion to municipal officials are impermissible as they "result [ ] in virtually unreviewable prior restraints on First Amendment rights." *Plain Dealer Pub. Co.,* 794 F.2d at 1144 (citing *Kunz v. People of State of New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Saia v. People of State of New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948)).

Additionally, the deposition testimony of the defendant's legal advisor[14] demonstrates the breadth of the standardless discretion utilized by the municipal officials in determining what should be displayed in the Rotunda. Mr. Reed's attitude concerning the display of "Gwen" stands in contrast to his attitude concerning the display of works of art depicting Confederate flags and the Nazi persecution of the Jews.[15] This contrast weighs in favor of the conclusion that at the

time that "Gwen" was removed, the decision to do so was guided only by the perceptions and "common sense" of the municipal officers of the defendant. Deposition of Mr. Reed (Docket Entry No. 15) at 51–58.

The Court concludes that the defendant opened the Rotunda to the public as a limited public forum in which certain works of art would be displayed. As a limited public forum, restrictions on protected speech are permissible only through narrowly tailored limitations which further the asserted state interest. *Perry,* 460 U.S. at 46, 103 S.Ct. at 955, 74 L.Ed.2d at 805. At the time the painting was removed, the guiding criteria for the selection of works of art contained no provision for limitation of subject matter. As such, the defendant's arbitrary decision to remove the painting of the plaintiff was guided by nothing other than the subjective perceptions of municipal officials. In this context, such an action banning protected expression based on a standardless discretion cannot be upheld as constitutional. *See Plain Dealer Pub. Co.,* 794 F.2d at 1144.

The plaintiff has also brought a claim for violation of her procedural due process rights. However, this claim is an alternative ground for awarding injunctive relief and nominal damages. As the Court has found for the plaintiff with regard to the First Amendment claim, there is no need to reach the procedural due process issue.

### B. New Art Policy

In her complaint, the plaintiff seeks a declaratory judgment establishing that the defendant's new art policy violates the First Amendment and an injunction restraining the defendant from enforcing the policy. Complaint (Docket Entry No. 1) at ¶¶ 36–39. It is well established that while federal courts may not issue advisory opin-

---

13. Defendant's responses to plaintiff's statement of undisputed material facts (Docket Entry No. 28) at ¶ 15.

14. Mr. Reed asserted that it is his function to provide legal expertise to the defendant and, as such, he takes action to protect the defendant from liability when he perceives that to be appropriate. Deposition of Mr. Reed (Docket Entry No. 15) at 51–58. In fact, Mr. Reed, himself,

removed the painting from the Rotunda. *Id.* at 58.

15. Deposition of Mr. Reed (Docket Entry No. 15) at 63. Mr. Reed stated that even if employees claimed to be offended by such depictions, he did not believe the depictions would violate the defendant's employee policies such that they should be removed from display. *Id.*

ions, declaratory relief may be awarded when an actual controversy exists pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. In order for an issue to be justiciable, it must constitute an actual case or controversy between parties having adverse legal interests. *See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984).

■ Although the parties failed to address this point in their pleadings, it is well established that the Court is precluded from considering a non-justiciable issue. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975). It is not at all clear to the Court that the plaintiff has standing to challenge the constitutionality of the new art policy. The threshold issue in the determination of standing is whether the plaintiff has suffered or imminently will suffer an injury. *See Northeastern Florida Chapter of the Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586, 595 (1993).

■ The Court has already determined that Mrs. Henderson suffered an injury pursuant to the previous policy. However, the plaintiff has presented nothing to indicate that she has been injured by the new art policy. Furthermore, Mrs. Henderson has not established that she is in danger of imminent injury from the new policy. That the plaintiff was invited once to display her paintings does not establish that she will be invited to do so again. As the Supreme Court has noted, intentions of being in the position to experience the constitutional injury will not suffice if the intentions do not include "any description of concrete plans, or indeed any specification of when [that] day will be." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, 112 S.Ct. 2130, 2138, 119 L.Ed.2d 351, 367 (1992). Accordingly, the Court finds that Mrs. Henderson cannot show actual or imminent injury, and, as such, does not possess standing to challenge the constitutionality of the new art policy.

## IV. Conclusion

The Court concludes that the plaintiff is entitled to judgment as a matter of law as to her claim that the defendant violated her First Amendment rights by removing her painting from the Rotunda. Specifically, she established that the defendant failed to draw sufficiently narrowly tailored content-based restrictions of First Amendment expression in its initial criteria which guided the action of removing the painting.

The Court further concludes that Mrs. Henderson was not injured by the new art policy, and as such, does not have standing to challenge its constitutionality. Accordingly, the plaintiff's motion for partial summary judgment will be denied as to that claim.

The defendant's motion for summary judgment will be denied as to the plaintiff's claim of violation of her constitutional rights for removal of the painting and granted as to her challenge to the constitutionality of the new art policy.

An appropriate order will be entered.

## ORDER

In accordance with the memorandum contemporaneously entered, the plaintiff's motion (filed September 9, 1996; Docket Entry No. 9) for partial summary judgment is granted in part and denied in part and the defendant's motion (filed September 10, 1996; Docket Entry No. 19) for summary judgment is granted in part and denied in part.

Accordingly, the plaintiff shall have and recover from the defendant nominal damages in the amount of one dollar ($1.00) and her reasonable attorney fees as the prevailing party pursuant to 42 U.S.C. § 1988.

The plaintiff's application for award of attorney fees shall be made within the time and in the manner provided by Rule 13, Local Rules of Court.

The entry of this order shall constitute judgment in this action.

It is so ORDERED.